[No. C057847. Third Dist. Jan. 25, 2010.]

THE PEOPLE, Plaintiff and Respondent, v.
JEFFREY DOUGLAS POWELL, Defendant and Appellant.

**[CERTIFIED FOR PARTIAL PUBLICATION*]**

*Pursuant to California Rules of Court, rule 8.1110, this opinion is certified for publication with the exception of parts III, IV and V of the Discussion.

**COUNSEL**

Patricia L. Brisbois, under appointment by the Court of Appeal, for Defendant and Appellant.

Edmund G. Brown, Jr., Attorney General, Michael P. Farrell, Assistant Attorney General, David A. Rhodes and Daniel B. Bernstein, Deputy Attorneys General, for Plaintiff and Respondent.

OPINION

**SIMS, J.**—This case arises out of a police chase in which a drunk driver, defendant Jeffrey Douglas Powell, attempted to elude officers by car and then on foot. While fleeing, defendant conspired with his mother to falsely report the car stolen in an effort to avoid identification as the driver.

Defendant was charged with five felonies and five misdemeanors. The felonies included driving under the influence of alcohol (DUI), causing injury (Veh. Code, § 23153, subd. (a)—count 1),[1] driving with an unlawful blood-alcohol level, causing injury (§ 23153, subd. (b)—count 2), leaving the scene of an injury accident (§ 20001, subd. (a)—count 3), unsafe driving while fleeing a pursuing officer (§ 2800.2, subd. (a)—count 4), and conspiracy to file a false police report (Pen. Code, §§ 148.5, 182, subd. (a)(1)—count 5). The information further alleged defendant injured more than one victim (§ 23558), had a prior DUI conviction (§ 23560), had a prior serious felony conviction (Pen. Code, §§ 667, subds. (b)–(i), 1170.12, subd. (a)), and served a prior prison term (Pen. Code, § 667.5, subd. (b)). The charged misdemeanors included two counts of resisting a peace officer (Pen. Code, § 148, subd. (a)(1)—counts 6 & 7), driving with a license suspended for a DUI conviction (§ 14601.2, subd. (a)—count 8), driving with a license suspended for no proof of insurance (§ 14601.1, subd. (a)—count 9), and reckless driving (§ 23103, subd. (a)—count 10).

During trial, the court granted defendant's motion to dismiss the two DUI felonies but substituted the lesser included misdemeanor DUI offenses (§ 23152, subd. (a)) and driving with an unlawful blood-alcohol level (§ 23152, subd. (b)). The jury convicted defendant on all the charges and found true the allegations of injuring more than one victim and having a prior DUI conviction. The trial court found true allegations that defendant had a prior serious felony conviction, and served a prior prison term. The court sentenced him to a term of seven years eight months in state prison.

On appeal, defendant contends (1) the trial court lacked jurisdiction to substitute the lesser included misdemeanors for the felony DUI charges, (2) insufficient evidence supports his conviction of leaving the scene of an injury accident, (3) the trial court erred in failing to conduct a hearing on possible juror misconduct, (4) his trial attorney was ineffective in failing to investigate information contained on a cell phone found near the scene, and (5) his sentence for driving with a license suspended for no proof of insurance must be stayed pursuant to Penal Code section 654.

In the published portion of the opinion, we conclude the trial court did not err in substituting two misdemeanor charges for two felony charges for which

---

[1] Undesignated statutory references are to the Vehicle Code.

there was insubstantial evidence. However, we find that no substantial evidence supports defendant's conviction for violation of section 20001.

In the unpublished portion of the opinion, we conclude that defendant's sentence for violation of section 14601.1 must be stayed pursuant to Penal Code section 654. But we conclude defendant's other contentions of error lack merit.

Accordingly, we shall reverse defendant's conviction on count 3; stay the sentence on count 9; and otherwise affirm the judgment.

## FACTS

Around 2:30 a.m. on July 30, 2006, Roseville Police Officer Andrew Bonner was driving a marked patrol car when he noticed a pack of five or six cars traveling together in a close formation on Cirby Way. Each car contained at least three teenagers. The officer decided to follow the cars. He soon observed the lead car, a silver-colored Chevrolet Malibu, make a reckless turn. While driving to intercept the Chevrolet, the officer saw a passenger lean his body out of the car to wave his arms at the other cars. Officer Bonner turned on his emergency lights and used a loudspeaker to order the driver to pull over. After several hundred yards, the Chevrolet came to a stop.

Officer Bonner got out of his patrol car and walked to the Chevrolet. He observed the driver was wearing a green baseball cap and his shoulders and arms were exposed. The passenger in the front was a White male in his early 20's who was wearing a tank top. The officer also noticed a passenger in the backseat.

Just as the officer reached the rear passenger door, the Chevrolet took off at a high rate of acceleration. Officer Bonner ran back to his patrol car and gave chase. When the officer caught up to the Chevrolet, he was going 60 to 70 miles per hour. The Chevrolet made a right turn on to Wildwood Way and came to an abrupt stop on the side of the road.

Two men jumped out of the front of the car and began to run. The driver was shirtless and wearing a green baseball hat. The passenger was wearing a white tank top. Officer Bonner decided to pursue the driver. As he was driving by the Chevrolet, a passenger (later identified as Kristina Giachino) got out of the rear driver's side door. The officer slammed on the brakes and swerved right to avoid hitting her. But Giachino suddenly changed direction. The officer's vehicle struck Giachino and the Chevrolet before crashing into a tree. In the collision, the officer struck his head against the inside of the patrol car and briefly lost consciousness.

When the officer regained consciousness, he saw Giachino climbing over a nearby fence. He ordered her to sit down, and she complied.

Bonner heard voices from the other side of a nearby fence. When he looked through a hole, he saw the driver and front seat passenger hopping another fence toward an apartment complex. However, he was unable to catch them.

Roseville Police Officer David Buelow responded to a call for help in searching for the suspects. Officer Buelow spotted defendant standing in an apartment complex. The officer turned a spotlight on defendant, who gestured at the officer with his middle finger before running. Defendant was quickly caught.

Defendant denied drinking or driving that night. A blood sample drawn from defendant at 4:37 a.m. indicated a blood-alcohol level of 0.16 percent. A search of the Chevrolet yielded defendant's checkbook and a liquor store receipt.

After the car chase but prior to his arrest, defendant used his cell phone to place three calls to his mother, Jamie Lewis. Lewis was the owner of the Chevrolet. Defendant asked his mother to report her car stolen. She called 911 to report the theft of her car.

Testifying under a grant of immunity, Lewis admitted that she falsely reported her car as stolen after her son called her in a panic.

The prosecution introduced certified records from the Department of Motor Vehicles to show that defendant's driver's license had been suspended at the time of the incident.

## DISCUSSION

### I

### Jurisdiction to Substitute Lesser Included Offenses After the Trial Court Granted Defendant's Motion for Acquittal on the Greater Offenses

Defendant contends the trial court exceeded its jurisdiction by substituting lesser included offenses after granting defendant's motion for acquittal of felony DUI charges (counts 1 & 2). We reject the argument.

## A

After the prosecution rested its case, defense counsel made a motion under Penal Code section 1118.1 for a judgment of acquittal as to all 10 counts. Outside the presence of the jury, the trial court heard argument from the prosecutor and defense counsel as to the sufficiency of the evidence pertaining to each count. As to counts 1 and 2, defense counsel argued that the evidence failed to show defendant caused the injuries to Giachino and Officer Bonner. The trial court agreed, stating: "Looking at the facts, it's fairly clear from the evidence that if Ms. Giachino hadn't gotten out of the car, that the officer would have simply driven by the car, which leads me to the conclusion that the [defendant and front passenger's] stopping and leaving the doors open and jumping out did not cause the collision and resulting injury to the officer. [¶] . . . [¶] The court has to make a determination whether there is sufficient evidence on appeal for a jury to find that what the two men did by jumping out of the car and running was a substantial factor in causing the injury. In that regard the court comes to the conclusion that what Ms. Giachino did and the fact that the officer knew she was in there is really a superseding, intervening event, which breaks the chain of causation. Again, if she had stayed in the car, there would have been no collision with that car, no collision with that tree, and I can't speculate whether he would have hit something at another time. [¶] Therefore, based on that, I do find that the element number four under [CALCRIM No.] 2100[2] DUI causing injury that the defendant's illegal act or failure to perform a legal duty caused bodily harm to another person has not been shown, and if the jury were to find that true it would not be cognizable [sic] on appeal. [¶] I am going to have to grant the motion to dismiss Counts One and Count Two [sic] on the insufficiency of the evidence. [¶] [Defense counsel], did you wish to continue?"

Defense counsel argued for dismissal of counts 3 to 10, but the court denied the motion as to the remaining counts. The prosecution then inquired about amendment of the information:

"[The prosecutor]: Your Honor, I had—we had earlier discussed the possibility of the lesser included as to Counts One and Two, and I did submit those to the court, the jury instructions for those. Do I need to make a motion to amend at this point to add those or do you just want to substitute those lesser includeds in as Counts One and Two?

---

[2] CALCRIM No. 2100 provides that conviction for DUI causing injury (§ 23153, subd. (a)) requires the prosecution to prove four elements, including "[t]he defendant's (illegal act/[or] failure to perform a legal duty) caused bodily injury to another person."

"THE COURT: Well, based on the ruling I will be instructing the jury they are no longer dealing with Counts One and Two, 23152(a) and (b),[3] and that instead they are dealing with two counts of what are known as lesser included offenses 23152(a) and (b), driving under the influence and driving with .08. I will be instructing them at the appropriate time.

"[The prosecutor]: Okay.

"THE COURT: Anything further this morning?

"[Defense counsel]: No, your Honor."

The court then recessed for lunch before the defense called its first witness.

**B**

When the evidence appears insufficient for a jury to convict, the defense may move for acquittal when the prosecution rests its case. To this end, Penal Code section 1118.1 provides, in relevant part: "In a case tried before a jury, the court on motion of the defendant or on its own motion, at the close of the evidence on either side and before the case is submitted to the jury for decision, shall order the entry of a judgment of acquittal of one or more of the offenses charged in the accusatory pleading if the evidence then before the court is insufficient to sustain a conviction of such offense or offenses on appeal."

▇ Although the evidence may fail to support a conviction of the charged offense, the trial court has discretion to substitute a lesser included offense for the jury's consideration. " '[I]n determining a motion pursuant to Penal Code section 1118.1, the trial judge is entitled to consider whether, although the evidence is insufficient to establish the commission of the crime specifically charged in the accusatory pleading, the evidence is sufficient to sustain a conviction of a necessarily included offense which the evidence tends to prove. A defendant may be convicted of a lesser offense if he was charged with a felony which included the lesser offense.' " (*People v. Meyer* (1985) 169 Cal.App.3d 496, 507 [215 Cal.Rptr. 352], quoting *People v. Wong* (1973) 35 Cal.App.3d 812, 828 [111 Cal.Rptr. 314].)

Defendant does not deny that trial courts have discretion to substitute a lesser included offense upon a finding of insufficient evidence as to the greater offense. Instead, defendant contends that the trial court in this case failed to make such substitution when it dismissed his two DUI felonies.

---

[3] The court misspoke, clearly intending to refer to section 23153 instead.

Specifically, defendant asserts that "unless the court, *prior* to granting the motion for acquittal expressly limits its ruling to acquittal of the greater offense charged but not the lesser included offense, the judgment of acquittal applies to both the greater and lesser included offenses."

In support of his argument, defendant emphasizes the holdings in *People v. Garcia* (1985) 166 Cal.App.3d 1056 [212 Cal.Rptr. 822] (*Garcia*) and *People v. McElroy* (1989) 208 Cal.App.3d 1415 [256 Cal.Rptr. 853] (*McElroy*), disapproved on other grounds in *People v. Cromer* (2001) 24 Cal.4th 889, 901, footnote 3 [103 Cal.Rptr.2d 23, 15 P.3d 243]. Both cases hold that a trial court may not reinstate a lesser included offense after the greater charged offense has been dismissed.

In *Garcia*, the Court of Appeal reversed a conviction for attempted rape because the trial court's dismissal of the original rape charge left it without discretion to make a later substitution. As *Garcia* explains, the substitution of the lesser offense came as an afterthought following a nearly two-hour recess: "At the conclusion of the prosecution's case the defendant made a motion for acquittal . . . . The motion was granted as to [the] charged violation of Penal Code section 261, subdivision (2) (forcible rape). The court and counsel then discussed other matters before the lunch recess was declared at approximately 12 p.m. At 1:40 p.m. the trial resumed. Before defense counsel began presentation of his case the prosecutor asked the court to clarify its ruling on the motion for acquittal. The prosecutor expressed the opinion that acquittal of the charged offense did not mean that the defendant was acquitted of the necessarily included offense of attempted rape. *The court stated that it had not even considered the question of lesser included offenses and asked for further argument from counsel.* After extensive argument the court concluded that its prior order did not acquit defendant of the lesser included offense of attempted rape. At the conclusion of the trial the defendant was found guilty of attempted rape." (*Garcia, supra,* 166 Cal.App.3d at pp. 1066–1067, italics added.) Assuming *Garcia* was correctly decided, the case teaches that a trial court may not resurrect a charge after the defendant has achieved a modicum of repose from prosecution—even if the newly instituted charge is a lesser included offense.

In *McElroy, supra,* 208 Cal.App.3d 1415, the trial court dismissed the charge of robbery, and the prosecution sometime "thereafter moved to amend count 15 to plead attempted robbery." (*Id.* at p. 1423.) In reversing the attempted robbery conviction, the *McElroy* court explained that "where the accusatory pleading fails separately to charge lesser included offenses, and the court grants a motion for acquittal under [Penal Code] section 1118.1 without any prior indication that the ruling is intended to be limited to acquittal only on the greater, charged offense . . . , the judgment of acquittal

on the charged offense includes acquittal on all uncharged lesser included offenses." (*Id.* at p. 1424.) Although *McElroy* does not specify the length of time that elapsed after the trial court dismissed the charged crime and before the prosecution moved to substitute the lesser included offense, the Court of Appeal noted that it found *Garcia* to be indistinguishable. (*Id.* at p. 1423.) Ultimately, *McElroy* stands for the unproblematic proposition that a defendant may not be threatened anew by a lesser included offense after the greater offense has been unequivocally dismissed.

Here, defendant's thin dissection of the trial court's comments in response to his motion for acquittal ignores the unbroken nature of the proceeding within which the court ordered the dismissals and stated its intent to instruct on the lesser included offenses. The record shows that the trial court considered the charges one at a time to carefully and methodically determine whether defendant's oral motion should be granted as to any count. As to counts 1 and 2, the trial court noted that the evidence failed to support only one of the elements of the first two charges: causation of injury.

As part of the same colloquy in which the trial court noted the lack of evidence for counts 1 and 2, the court stated its intention to instruct the jurors on the lesser included offenses. No recess or consideration of matters other than the motion for acquittal allowed defendant to conclude that he was free from prosecution on the first two counts. Instead, the recess for lunch occurred with defendant knowing that he still faced charges—albeit lesser included charges—for conduct alleged in counts 1 and 2. As part of the single discussion of the motion for acquittal, the trial court expressed its intent to instruct on the lesser included offenses.

Defendant would have us require trial courts declare a reservation of the prosecution's prerogative to proceed on lesser included offenses only before dismissing the greater charges. Under defendant's approach, he would not be subject to prosecution if the court had stated: "Counts 1 and 2 are dismissed. The prosecutor may proceed on the lesser included offenses." Defendant would have us hold the second sentence to be too late after the acquittals stated in the first sentence.

■ Overly technical application of the rule that judgment is effective when pronounced disallows the trial court from taking even a single breath between indicating an intent to dismiss and allowing the prosecution to proceed according to the evidence. "We believe that we must view this case in its proper perspective and in light of the obvious purpose of section 1118.1, which is not to interfere with the jury process but to insure speedy acquittals of criminal charges which are not supported by substantial evidence. We therefore spurn a slavish adherence to formality and resort to

common sense for the solution. While procedural exactness is to be admired, it is no longer considered an indispensable ingredient to effective judicial administration, and a court may look through form to substance if necessary to attain justice." (*People v. Odom* (1970) 3 Cal.App.3d 559, 565 [83 Cal.Rptr. 520] (*Odom*).)

Here, the trial court conscientiously sorted through the charges in a methodical manner before determining how to proceed on the charges for which the evidence was insufficient. We find no fault with the court's separation of considering the evidence and deciding on how to proceed. Unlike *Garcia*, the trial court did not forget or overlook the possibility of instructing the jury on lesser included offenses to the dismissed charges. Instead, the court's consideration of the motion to dismiss culminated with a stated intent to instruct on the lesser included offenses.

Defendant enjoyed no repose from prosecution on counts 1 and 2, and he was not prejudiced by the substitution prior to the defense's presentation of its case-in-chief. Moreover, defense counsel failed to object to the substitution of offenses even when asked if she had any response. We cannot find any error in such a circumstance. "[B]ecause counsel for both sides knew and understood the true intent behind the trial court's ruling from the very beginning, completed the trial without objection and then stood silently by while the court submitted the cause to the jury . . . , it must be deemed that they tacitly stipulated to an amendment to the information which made the court's ruling procedurally possible." (*Odom, supra,* 3 Cal.App.3d at p. 566.)

The trial court did not err in instructing the jury on the lesser included offenses of counts 1 and 2 as originally charged.

## II

### Sufficiency of the Evidence—Leaving the Scene of an Injury Accident

■ Defendant argues he should not have been convicted of violating section 20001, subdivision (a), for failing to render aid after an accident that he did not cause and which occurred after he left the scene. He asserts that "there was insufficient evidence to support his conviction under . . . section 20001, subdivision (a) because the vehicle was parked and no longer being driven when the injury-producing event occurred." We agree and reverse defendant's conviction of section 20001, subdivision (a) (count 3).

### A

Although defendant was the driver of the Chevrolet, the trial court found he did not cause the injuries sustained by Giachino or Officer Bonner. As

Officer Bonner explained, he collided with Giachino after she unexpectedly ran in front of his patrol car. The officer testified:

"Q. So when you went to maneuver your car around the [Chevrolet], what happened?

"A [Officer Bonner] The back[seat] passenger got out of the car and ran in front of me.

"Q. And what happened?

"A I did everything I could to avoid her. The way she jumped out of the car, running, it appears [*sic*] she was going to run towards the other side of the roadway, so I figured my best way not to strike her would be to slam on my breaks and pull as hard to the right as I could, so that's what I did.

"Q. And what happened?

"A Instead of running towards the curb, like I had hoped, she ran, she took a couple of steps towards the curb and ran behind the suspect's vehicle back into my path.

"Q. And what happened?

"A I then collided with the [Chevrolet]. I collided with the young lady."

In dismissing counts 1 and 2 as charged, the trial court stated: "I don't think there is any assertion that [Officer Bonner] would have hit the vehicle for any other reason except that Ms. Giachino ran. [¶] . . . Again, if she had stayed in the car, there would have been no collision with that car, no collision with that tree, and I can't speculate whether he would have hit something at another time."

## B

■ Subdivision (a) of section 20001 provides: "The driver of a vehicle involved in an accident resulting in injury to a person, other than himself or herself, or in the death of a person *shall immediately stop the vehicle at the scene of the accident* and shall fulfill the requirements of Sections 20003 and 20004." (Italics added.) Section 20003, subdivision (a), requires a driver to furnish identifying information to police officers and occupants of any struck vehicle, and to render reasonable assistance to any injured persons. When the

accident results in a death, section 20004 additionally requires the driver to report the fatality to the California Highway Patrol or other law enforcement authority.

The conduct prohibited by section 20001 is not the causing of an accident or injury but leaving the scene without presenting identification or rendering aid. (*People v. Escobar* (1991) 235 Cal.App.3d 1504, 1509 [1 Cal.Rptr.2d 579].) In requiring self-identification, "sections 20001 and 20003 are part of a statutory scheme which imposes on drivers the obligation to self-report when the driver's vehicle has been involved in an accident. The purpose of these statutes is 'to promote the satisfaction of civil liabilities arising from automobile accidents. . . .' (*California v. Byers* (1971) 402 U.S. 424, 430 [91 S.Ct. 1535, 1539, 29 L.Ed.2d 9]; see also *People v. Jimenez* [(1992)] 11 Cal.App.4th [1611,] 1625 & 1628, fn. 10 [15 Cal.Rptr.2d 268].)" (*People v. Kroncke* (1999) 70 Cal.App.4th 1535, 1546–1547 [83 Cal.Rptr.2d 493].)

## C

Defendant urges us to read section 20001, subdivision (a), to impose criminal liability only on the failure to self-identify or render aid when the driver is occupying the vehicle at the time of the accident. "In construing a statute, our fundamental task is to ascertain the Legislature's intent so as to effectuate the purpose of the statute. (*Day v. City of Fontana* (2001) 25 Cal.4th 268, 272 [105 Cal.Rptr.2d 457, 19 P.3d 1196].) We begin with the language of the statute, giving the words their usual and ordinary meaning. (*Ibid.*)" (*Smith v. Superior Court* (2006) 39 Cal.4th 77, 83 [45 Cal.Rptr.3d 394, 137 P.3d 218].)

The plain language of section 20001 contemplates that the driver be driving when the accident occurs because the statute commands that a driver "shall immediately stop the vehicle at the scene of the accident . . . ." Here, defendant had already stopped his vehicle and fled the scene of the accident before anyone was injured. In essence, the prosecution secured a conviction of section 20001 based on defendant's failure *to return* to the scene of an accident. Section 20001 is a stop-and-help statute that does not impose criminal liability for failure to come back to an accident occurring after the driver has departed. Section 20001 criminalizes "hit and run," not "run and get hit."

The Attorney General argues that defendant was the driver of a vehicle involved in an accident, and therefore falls within the ambit of section 20001. We agree that defendant was the driver of the vehicle. Even so, we must account for what happened after he ceased driving. Defendant's departure from the scene before the accident occurred broke the connection

between the driving and the resulting injury. A connection between the driving and the injury is required before the duties of section 20001, subdivision (a), are triggered.

Respondent also argues that defendant's location away from the vehicle at the time of the accident did not shield him from criminal liability. To support this proposition, we are offered the authority of *People v. Kroncke, supra,* 70 Cal.App.4th 1535, *People v. Corners* (1985) 176 Cal.App.3d 139 [221 Cal.Rptr. 387], *People v. Bammes* (1968) 265 Cal.App.2d 626 [71 Cal.Rptr. 415], and *People v. Sell* (1950) 96 Cal.App.2d 521 [215 P.2d 771]. These cases are inapposite because each involved a person who was driving at the time of the accident.

In *People v. Kroncke, supra,* 70 Cal.App.4th 1535, the Court of Appeal upheld a conviction of section 20001 after the defendant failed to tell police officers at the scene of the accident that the decedent had jumped from his moving truck. (70 Cal.App.4th at p. 1539.) The *Kroncke* court held that the defendant was required to report to the officer who questioned him that he was driving the vehicle from which the passenger jumped. (*Id.* at p. 1542.) In so holding, the *Kroncke* court rejected the defendant's contention that section 20001 contained no requirement that a driver report involvement in an injury accident. (70 Cal.App.4th at pp. 1543–1544.) Here, defendant was not involved in the accident that caused the injuries; he had already fled.

*People v. Corners, supra,* 176 Cal.App.3d 139, involved an appeal by the People from the trial court's failure to impose a restitution fine on a defendant who was acquitted of criminal wrongdoing for the driving accident. (*Id.* at pp. 141–142.) Although the defendant was guilty of leaving the scene without rendering aid or self-identifying, we affirmed the trial court's refusal to impose a restitution fine for injuries for which the defendant was not criminally liable. (*Id.* at p. 142.) The defendant in *Corners* was driving the vehicle at the time of the accident. (*Ibid.*) Thus, *Corners* offers no basis to conclude that section 20001 requires a driver who has parked and left his car to return to it after a later-occurring accident.

In *People v. Bammes, supra,* 265 Cal.App.2d 626, the defendant challenged her conviction of section 20001 on grounds that she was unaware of having caused an accident resulting in five fatalities. (265 Cal.App.2d at pp. 628, 631.) The defendant suddenly pulled into a roadway, thereby causing a station wagon to collide with a logging truck. However, she did not stop or inform the police of the accident. (*Id.* at p. 630.) Her conviction of section 20001, subdivision (a), was affirmed because the evidence showed such a tremendous impact from the collision that she should have been aware of the accident. (265 Cal.App.2d at pp. 629, 634.) Moreover, the defendant went

home after the accident and discussed it with her husband, insurance agent, and attorney. (*Id.* at p. 634.) Regardless of whether she was at fault for causing the accident, she was involved so that she was required to stop and render aid. (*Id.* at pp. 631–632.)

Similarly, in *People v. Sell, supra,* 96 Cal.App.2d at page 523, "the court in interpreting section 480 of the then Vehicle Code, the predecessor of section 20001, which contained the identical pertinent language now found in the latter section, stated 'It seems clear that the word "involved" is there used in the sense of being connected with (an accident) in a natural or logical manner. The statute relates to a driver thus involved in such accident and is in no way made dependent upon whether or not control of a vehicle is retained or lost, or upon who may ultimately be found to be most at fault.' " (*People v. Bammes, supra,* 265 Cal.App.2d at p. 631.) In *Sell,* as in the other cited cases, the person convicted of section 20001 was driving at the time of the injury accident. (*Bammes,* at p. 634; *People v. Sell, supra,* at p. 522.) Here, defendant was neither driving his car nor at the scene of the accident when Giachino and Officer Bonner were injured.

■ The Attorney General urges us to affirm the conviction on the ground that it would serve the policy of section 20001 to ensure that persons involved in automobile accidents report the facts and circumstances of the accidents. However, the Attorney General fails to link this policy argument to the text of section 20001. We have no license to abandon the text. Whatever may be thought of the wisdom, expediency, or policy of a statute, we have no power to rewrite the statute to make it conform to a presumed intention that is not expressed. (*Morillion v. Royal Packing Co.* (2000) 22 Cal.4th 575, 585 [94 Cal.Rptr.2d 3, 995 P.2d 139].)

Although defendant had driven the vehicle from which Giachino ran, section 20001, subdivision (a), did not require him to return to the accident. Accordingly, insubstantial evidence supports his conviction on count 3 for leaving the scene of an injury accident.

### III–V*

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

### DISPOSITION

Defendant's sentence for driving with a license suspended for no proof of insurance (Veh. Code, § 14601.1, subd. (a)—count 9) is ordered stayed, such

---

*See footnote, *ante,* page 304.

stay to become permanent upon completion of the sentence for driving with a license suspended for a conviction of driving under the influence of alcohol (Veh. Code, § 14601.2, subd. (a)—count 8). Defendant's conviction for leaving the scene of an injury accident (Veh. Code, § 20001, subd. (a)—count 3) is reversed. Consequently, defendant's total state prison sentence is six years four months. In all other respects, the judgment is affirmed.

The trial court is directed to prepare an amended abstract of judgment and to send a certified copy of the same to the Department of Corrections and Rehabilitation.

Scotland, P. J., and Hull, J., concurred.